**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **GURNEY ALFRED** | **:** | **CIVIL ACTION** |
| | **:** | **NO. 12-00801** |
| **VERSUS** | | |
| | **:** | **JUDGE JAMES J. BRADY** |
| **STATE OF LOUISIANA THROUGH** | **:** | **MAGISTRATE JUDGE** |
| **THE DEPARTMENT OF** | | **STEPHEN C. RIEDLINGER** |
| **CORRECTIONS** | | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY**</u>
<u>**JUDGMENT**</u>

**MAY IT PLEASE THE COURT:**

The moving party, the State of Louisiana through the Louisiana Department of Corrections urges this Honorable Court to grant summary judgment on Plaintiff's claims.

**I.**      <u>**STATEMENT OF THE CASE**</u>

Alfred Gurney, (hereinafter referred to as "Plaintiff"), was employed by the Louisiana Department of Corrections (hereinafter referred to as "DOC") and worked at Louisiana State Penitentiary (hereinafter referred to as "LSP" or "Angola") in Angola, Louisiana. Plaintiff filed suit against the State of Louisiana through the Louisiana Department of Corrections on December 26, 2012.[1] Under Title VII, Plaintiff alleged race discrimination, harassment based on race and retaliation.[2] Plaintiff also alleged emotional distress and that his right to due process was violated.[3]

Plaintiff worked at LSP as a Master Sergeant of Corrections. From 2006 until 2010, Plaintiff worked at Camp RC at LSP where offenders on extended lockdown were housed.[4]

---

[1] Rec. Doc. 1.
[2] Rec. Doc. 1.
[3] *Id.*
[4] Exhibit A, p.25, lines 18-20; Exhibit Q; Exhibit D.

Plaintiff's supervisors were Lt. Bryan Myers and Captain Warren Lemoine.[5]  Plaintiff asserts that while he worked at Camp RC, he routinely made verbal complaints.[6]  He alleges he was called "black bitch" on one occasion and that the words "your type" and "your kind" were used on two other occasions.[7]  Plaintiff also alleges that while at Camp RC, he was assigned different drops or different areas at Camp RC and that sometimes he was assigned to work different areas than Camp RC at the prison.[8]  Plaintiff asserts he applied for a promotion to lieutenant on three occasions from December 2009 to April 2010; Plaintiff was interviewed on two of these five occasions.[9]  Plaintiff filed two grievances with LSP in May 2010.[10]  He then filed a charge with the EEOC in June 2010.[11]

On July 20, 2010, Plaintiff refused to report to Investigations as ordered by Capt. Lemoine.[12]  For not reporting to Investigations as told, Plaintiff was issued a VR-1 for Failure to Follow Orders.[13]  Plaintiff was placed on leave while the VR-1 was pending.[14]  Plaintiff was paid while on leave.[15]  At Plaintiff's first level hearing, Warden Lamartiniere recommended Plaintiff be terminated for failing to follow orders.[16]  Plaintiff appealed; on August 17, 2010, the recommendation was remanded to the prison.[17]

On July 19, 2010, Plaintiff falsified a Yard Refusal Form by signing the inmates' names as though the inmates had refused yard that day.[18]  Capt. Lemoine issued Plaintiff a VR-1 for

---

[5] Exhibits D and H.
[6] Exhibit A, p.63, lines 5-22, p.87, lines 4-12.
[7] Exhibit A, p.59, lines 7-9, 18-24, p. 65, lines 7-12, 20-22, p. 68, lines 14-17.
[8] Exhibit A, p.36, lines 14-15, p.37, lines 7-12, p.38, lines 7-14.
[9] Exhibit A, p.48, lines 1-22; Exhibit T.
[10] Exhibit N.
[11] Exhibit A, p.97, lines 1-6.
[12] Exhibits D and P.
[13] Exhibits D and P.
[14] Exhibit I.
[15] Exhibit I; Exhibit A, p.111-113.
[16] Exhibits E and P.
[17] Exhibit O.
[18] Exhibit Q.

Falsifying Documents.[19]  At Plaintiff's first level hearing on October 21, 2010, Warden Lamartiniere recommended Plaintiff be terminated.[20]  At LSP, falsifying documents is a terminable offense and the only appropriate discipline is termination.[21]  Plaintiff appealed, but the decision was upheld and Plaintiff was terminated on November 29, 2010.[22]  Plaintiff then filed a charge with the EEOC in February 2011 alleging that he was terminated in retaliation for filing his first EEOC charge.[23]

In this suit, Plaintiff seeks back pay, reinstatement along with front pay and benefits, compensatory damages, punitive damages and reasonable attorney's fees and costs.[24]

The deadline to complete fact discovery has passed as has the deadline to submit expert witness list.[25]  The summary judgment evidence clearly shows that there is no genuine dispute of material fact and that defendant is entitled to judgment as a matter of law on Plaintiff's claims of race discrimination, harassment based on race, retaliation, due process violations and emotional distress.

## II.   LAW AND ARGUMENT
### a.  Summary judgment standard

The standard for summary judgment is found in Federal Rule of Civil Procedure Rule 56(a):

> "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[19] Exhibits D and Q.
[20] Exhibits E and Q.
[21] Exhibit E.
[22] Exhibit W; Exhibit Q.
[23] Exhibit S.
[24] Rec. Doc. 1.
[25] Rec. Doc. 14.

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[26] Supporting affidavits must set forth facts which would be admissible in evidence.[27] Opposing responses must set forth specific facts showing that there is a genuine dispute for trial.[28] To oppose a motion for summary judgment, a party may not rest upon mere allegations or denials contained in his pleadings.[29] The non-moving party must designate specific evidence which is of sufficient caliber and quantity to create a genuine dispute for trial such that a rational finder of fact could return a verdict in his favor.[30]

In determining the existence of any genuine dispute as to material fact, the inquiry performed is a threshold inquiry of whether there is a need for trial; that is, whether "there are any genuine factual issues that can properly be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[31] No genuine issue or dispute exists unless there is sufficient evidence favoring the non-moving party so that a fact finder could find for that party. When determining if a genuine factual dispute exists, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability. There is no genuine dispute if the evidence in opposition to the motion is insufficient caliber or quality to allow a rational fact

---

[26] FED. R. CIV. P. 56(a).
[27] FED. R. CIV. P. 56(c)(4).
[28] FED. R. CIV. P. 56(a).
[29] *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Jacquez v. Procunier*, 801 F.2d 789 (5th Cir. 1986); *Fontenot v. Upjohn Company*, 780 F.2d 1190 (5th Cir. 1986); *John Hancock Mut. Life Ins. V. Johnson*, 780 F.2d 1190 (5th Cir. 1984).
[30] *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Phillips Oil Company v. OCK Corporation*, 812 F.2d 265 (5th Cir. 1987).
[31] *Anderson*, 477 U.S. at 256-57 (1986).

finder to find in favor of the non-moving party.[32]  There must be more than a "metaphysical doubt" about the material facts.[33]

Defendant in this matter satisfies its initial responsibility in moving for summary judgment by informing the Court of the basis for this motion through the Statement of Undisputed Facts and attached exhibits, all demonstrating the absence of a genuine dispute of material fact that Plaintiff's allegations of discrimination, harassment, retaliation, emotional distress and violations of due process are without merit.

> **b.  Plaintiff cannot establish a prima facie case of race discrimination**
> **i.  Law**

Among other things, Title VII prohibits race discrimination.[34]  Race discrimination can be established through either direct or circumstantial evidence.  There are four factors required to establish a prima facie case for race discrimination under Title VII.[35]  The four factors that the plaintiff must establish are 1) the plaintiff belongs to a protected group, 2) the plaintiff was qualified for his position, 3) the plaintiff suffered adverse employment action and 4) the employer sought to replace the plaintiff with similarly qualified employee not belonging to a protected group or the plaintiff was treated less favorably because of his membership in that protected group than were other similarly situated employees who were not members of the protected group, under nearly identical circumstances.[36]

When a plaintiff offers evidence of another employee who was treated more favorably, that employee must not be a member of the protected group and must be similarly situated to the

---

[32] *Phillips Oil Company*, 812 F. 2d 265 (5th Cir. 1987)(citing *Anderson*, supra).
[33] *Matsushita*, 475 U.S. at 586 (1986).
[34] 42 U.S.C. § 2000e-2(a).
[35] *Ward v. Bechtel Corp.*, 102 F.3d 199 (5th Cir. 1997); see also *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[36] *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 258-62 (5th Cir. 2009)(citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 258-62 (5th Cir. 2009); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

plaintiff.[37]   Employees with different supervisors, employees who have different work responsibilities or employees who are subjected to adverse employment action for dissimilar violations are not similarly situated.[38]   The similarly situated requirement means that "an employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken "under nearly identical circumstances."[39]

### ii. Analysis

#### 1. Plaintiff's offered similarly situated comparators are not similarly situated

Here, Plaintiff alleges he was treated less favorably than other employees because of his membership in a protected class.[40]   Defendant shows that Plaintiff cannot establish a prima facie case of race discrimination because he cannot show that he was treated less favorably because of his membership in that protected group than were other similarly situated employees who were not members of the protected group, under nearly identical circumstances.   In discovery, Plaintiff identified Michael Evans, James Griffey, W.D. Harris and Michael Rabalais as employees he considered to be similarly situated to himself.[41]       First, Plaintiff alleges that these individuals did not complain as he did and so he was treated differently than these individuals because he complained.   Even taking this assertion as true and assuming *arguendo* that these four individuals were similarly situated comparators, Plaintiff's claim fails.   By alleging that he complained and other employees did not, Plaintiff attempts to elevate "complainers" as a protected class.   However, complainers are not a protected class.   As such, Plaintiff cannot prove that he belonged to a protected class of complainers and was treated differently than others

---

[37] *Id.*

[38] *Lee*, 574 F.3d at 260 (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000); *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)).

[39] *Lee*, 574 F.3d at 258-62 (5th Cir. 2009)(citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[40] Rec. Doc. 1.

[41] Exhibit B.

because of his complaining. Thus, even taking Plaintiff's assertion that he complained and others did not as true, his allegation that he was treated differently because he complained fails to establish a *prima facie* case of race discrimination.

Second, two of Plaintiff's alleged similarly situated comparators are not similaraly situated under nearly identical circumstances. W. D. Harris is a black male whose rank was Sergeant when he worked at LSP.[42] Plaintiff held the rank of Master Sergeant.[43] Harris is a member of the protected class; thus, Harris does not meet the criteria for a similarly situated comparator to be "not a member of the protected class."[44] Furthermore, Harris was never issued a VR-1 during his time at LSP.[45] Another alleged similarly situated comparator, James Griffey, was also never issued a VR-1 during his time of employment at LSP.[46] Plaintiff makes no allegation that Griffey engaged in the same behavior of falsifying documents as Plaintiff did. As such, Plaintiff cannot prove that two of the alleged similarly situated comparators are similarly situated.

Third, Plaintiff's behavior of falsifying documents was a far more egregious offense than those committed by the alleged similarly situated comparators, Michael Evans and Michael Rabalais. Plaintiff must "demonstrate that the employment actions at issue were taken "under nearly identical circumstances."[47] Plaintiff was issued a VR-1 for Falsifying Documents and subsequently terminated for that offense.[48] Defendant shows that Michael Evans was issued VR-

---

[42] Exhibit C; Exhibit J; Exhibit V.
[43] Exhibit A, p.23, lines 1-8.
[44] *Lee v. Kansas City S. Ry. Co.,* 574 F.3d 253, 258-62 (5th Cir. 2009)(citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).
[45] Exhibit J.
[46] *Id.*
[47] *Lee*, 574 F.3d at 258-62 (5th Cir. 2009)(citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).
[48] Exhibit Q.

1s for attendance issues.[49]  He was disciplined by receiving various suspensions and reductions in pay.[50]  Evans was also issued a VR-1 for placing two different level offenders in the same area at the same time; he was disciplined for this as well.[51]  Showing up for work late is not a "nearly identical circumstance" to falsifying documents.  As such, Plaintiff's use of Michael Evans as a similarly situated comparator fails.  Defendant shows Michael Rabalais was issued a VR-1 for allowing an inmate to carry U.S. Mail; Rabalais was given a reduction in pay for one day.[52]  Allowing an inmate to carry U.S. Mail on one occasion in 2004 is not a "nearly identical circumstance" to falsifying documents.  Neither Evans' nor Rabalais' violations rose to the level of egregiousness of Plaintiff's violation.

Last, Plaintiff complained that he was sent to different work locations and different drops.  However, Plaintiff testified that Evans, Harris and Griffey were sent to different work locations and drops as well.[53]  Michael Rabalais was a veteran employee at LSP.[54]  Rabalais was assigned to the lower bullpen for most of his shifts because he was responsible for the pill call.  Because one of Rabalais' duties was ensuring that the offenders receive their medications, it was important to have a consistent officer work that location.[55]  Additionally, defendant shows that seniority played a role in the assigning of drop locations.[56]  Furthermore, defendant shows that upper bullpen was generally assigned to MSgt. William Anderson, a black male, for the same reasons—seniority and pill call.[57]  Accordingly, Plaintiff cannot prove he was treated differently from similarly situated comparators.  As such, his race discrimination claim should be dismissed.

---

[49] Exhibit J.
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] Exhibit A, p.36, lines 14-25, p.37, lines 1-6, p.38, lines 7-25, p.39-40.
[54] Exhibits C and D.
[55] Exhibit D.
[56] Exhibit D.
[57] Exhibit D.

### c. Defendants show legitimate, non-discriminatory reasons for their actions
#### a. Law

Defendant further shows that the summary judgment evidence still proves defendant is entitled to summary judgment because of defendant's legitimate, non-discriminatory reasons for its actions. If the plaintiff carries his burden of proof and establishes a prima facie case, then the burden shifts to the defendant to "articulate a legitimate non-discriminatory reason for the termination."[58] Thus, the defendant must point to some other legitimate evidence and show by a preponderance of the evidence that the defendant would have made the same decision regardless of the plaintiff's race.[59] Defendant shows legitimate, non-discriminatory reasons for its actions.

#### b. Analysis

The incidents Plaintiff offers as evidence of racial discrimination are 1) being placed on suspension and 2) being issued a VR-1 for Failure to Follow Orders.[60]

As evidence of discrimination, Plaintiff offers Captain Lemoine's alleged suspension of Plaintiff without pay.[61] During his deposition, Plaintiff was asked to explain why he believed his suspension was based on race. Plaintiff testified that it was because that Captain Lemoine did not have authority to suspend him according to what Plaintiff thought he remembered reading in a rule book.[62] Plaintiff testified that he was paid for the three days of suspension and then he was on leave with pay for the rest of his suspension.[63] Defendant shows that Capt. Lemoine did not make the decision to suspend Plaintiff.[64] That decision was made by then Assistant Warden Leslie Dupont.[65] The decision was only made after Plaintiff was issued a VR-1.[66] Plaintiff was

---

[58] *Valdez v. San Antonio Chamber of Commerce*, 974 F.2d 592, 596 (5th Cir. 1992).
[59] *Id.*
[60] Exhibit A, p.113, lines 19-21, p.31, lines 23-25.
[61] Exhibit A, p.113, lines 19-21.
[62] Exhibit A, p.113, lines 19-25, p.114, lines 1-18.
[63] *Id.* at p.111-113.
[64] Exhibits D and I.
[65] Exhibit I.

paid during the time he was suspended.[67]  Plaintiff was not placed on leave because of his race, but because he was issued two VR-1s.[68]

Plaintiff asserts that the VR-1 he was issued for failure to follow orders was because of his race.[69]  Plaintiff was issued the VR-1 because he failed to follow Capt. Lemoine's order to report to Investigations.[70]  In July 2010, Plaintiff kept complaining about paint fumes at work.[71]  Capt. Lemoine allowed him to go to the Adult Treatment Unit at LSP to be seen by medical personnel.[72]  Plaintiff went to the doctor and then went back to RC.[73]  Capt. Lemoine received a call from Investigations at LSP asking for him to send Plaintiff to Investigations.[74]  Meanwhile, Plaintiff complained he needed to go see his doctor.[75]  Capt. Lemoine allowed Plaintiff to go, but told Plaintiff that he had to go to Investigations before leaving.[76]  Plaintiff did not go to Investigations as ordered.[77]  Consequently, because Plaintiff failed to follow the order given to him by his supervisor, Capt. Lemoine issued him a VR-1.[78]

Moreover, Plaintiff testified that he appealed the VR-1 and that it was overturned.[79]  Plaintiff also testified that he was not disciplined for this VR-1.[80]  When asked why he believed that the VR-1 was issued because of his race, Plaintiff responded "there wasn't any other reason for them to give it to me."[81]  Plaintiff has no evidence to show that his belief about the reason for

---

[66] *Id.*
[67] Exhibit A, p.113, lines 5-18.
[68] Exhibit I.
[69] Exhibit A, p.31, lines 23-25
[70] Exhibit D; Exhibit P.
[71] Exhibit D; Exhibit A, p. 28, lines 4-16.
[72] Exhibit D; Exhibit A, p.29, lines 29-25.
[73] Exhibit A, p.30, lines 10-19.
[74] Exhibit D.
[75] Exhibit A, p.30, lines 20-24.
[76] Exhibit D; Exhibit A, p.30, line 25, p.31, line 1.
[77] Exhibit A, p.31, lines 9-11.
[78] Exhibit D.
[79] Exhibit A, p.31, lines 17-20.
[80] *Id.* at p.31, lines 21-22.
[81] *Id.* at p.32, lines 3-7.

the issuance of the VR-1 was race.[82]  Plaintiff's only evidence that the VR-1 was issued because of his race is his self-serving subjective belief.  Accordingly, Plaintiff cannot prove his claim of race discrimination and the claim should be dismissed.

### d.  Plaintiff cannot prove harassment
#### i.  Law

In order to establish a hostile working environment claim, Plaintiff must prove: 1) he belongs to a protected group; 2) he was subjected to unwelcome harassment**;** 3) the harassment complained of was based on race; 4) the harassment complained of affected a term, condition, or privilege of employment; 5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[83]  For harassment to affect a term, condition, or privilege of employment, it must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[84]  In determining whether the alleged harassment constitutes a hostile work environment, courts must consider the following circumstances: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[85]  For a hostile working environment to be deemed sufficiently hostile, all of the circumstances must be taken into consideration.

A plaintiff's burden to demonstrate actionable conduct is high.[86]  To meet this high standard, the Fifth Circuit provided that the complained of conduct must be both objectively and

---

[82] *Id.* at p.32, lines 8-11.
[83] *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 353 (5th Cir. 2001); *Jones v. Flagship Int'l,* 793 F.2d 714, 719-720 (5th Cir. 1986).
[84] *Harris,* 510 U.S. 17,  21 (1993)(quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65 (1986)).
[85] *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir.2000) (quoting *Harris,* 510 U.S. at 23); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).
[86] *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Weller v. Citation Oil &Gas Corp.*, 84 F.3d 191, 194 (5 Cir. 1996); *Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 924 (5th Cir. 1982).

11

subjectively offensive.[87]  Thus, the plaintiff must perceive the environment as hostile *and* the conduct must also be such that a reasonable person would find it to be hostile or abusive.[88] Moreover, hostile environment claims based on race "must involve racially discriminatory intimidation, ridicule and insults."[89]

### ii.  **Analysis**

Plaintiff believes the following incidents and beliefs were harassing behavior by defendant: 1) a coworker called him a "black bitch" on one occasion, 2) his supervisor pounded his fist on his desk on one occasion, 3) another coworker said "I don't play with your type" on one occasion, 4) a third coworker said he was going to teach dogs "to attack your kind" on one occasion and 5) Plaintiff believes his supervisor tapped his phone.[90]

Even taking Plaintiff's assertion that three different coworkers on three separate occasions said "black bitch," "your type," and "your kind" to Plaintiff as true, as a matter of law, these three isolated incidents do not rise to the level of behavior which is severe or pervasive. These were the only instances of racial language or slurs Plaintiff could recall experiencing during his time at LSP.[91]  Plaintiff testified that he worked for LSP off and on over a period of some years; his last stint with LSP began in 2004 and ended in 2010—a period of six years.[92] Even if Plaintiff heard the words "black bitch" once, "your type" once and "your kind" once over a period of six years, this is not sufficiently severe or pervasive to constitute a hostile working

---

[87] *E.E.O.C. v. WC & M Enterprises, Inc*., 496 F.3d 393, 399 (5th Cir. 2007).
[88] *Id*.
[89] *Beaumont v. Texas Dept. of Criminal Justice*, 468 F.Supp. 2d 907, 918 (E.D.Tex. 2006)(citing *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).
[90] Exhibit A, p.59, lines 7-9, 18-24, p. 65, lines 7-12, 20-22, p. 68, lines 14-17, p. 78, lines 9-25, p. 79, lines 1-23, p. 91, lines 6-15, 20-24.
[91] Exhibit A, p.59, lines 18-24.
[92] Exhibit A, p.18-21; Exhibit Q.

environment.[93]  Moreover, other than his own self-serving testimony, Plaintiff has no evidence that the comments "your type" and "your kind" were based on his race.[94]

Additionally, even if Plaintiff's supervisor, Captain Lemoine, pounded his fist on Plaintiff's desk, this occurred one time and never again.[95]  A one time occurrence of a supervisor hitting a desk with his fist does not rise to the level of severe or pervasive.  Furthermore, while Plaintiff believes that Captain Lemoine's alleged action was because of race, Plaintiff has no evidence supporting this subjective belief.[96]

Plaintiff even believes his supervisor tapped his phones.[97]  Plaintiff alleges he walked into an office at LSP one day and heard a child's voice being played on a computer.[98]  Plaintiff believes that the voice was his child's, but he never inquired or complained about it.[99]  When asked if he had any proof that his phones were tapped, Plaintiff responded, "No."[100]  Clearly, Plaintiff has no evidence other than his opinion and self-serving testimony that his phones were ever tapped in the first place.

Moreover, Plaintiff cannot show he suffered any adverse action.  Plaintiff did not have his pay reduced.[101]  He did not receive a negative review on his annual performance review.[102]  Plaintiff was never issued a letter of counseling or a letter of reprimand.[103]  Plaintiff was verbally counseled from time to time, but he does not believe this counseling was based on his race.[104]

---

[93] Assuming *arguendo* that "your kind" and "your type" are comments based on race.
[94] Exhibit A, p.93, lines 20-25, p.94, lines 7-13, p.95, lines 9-25.
[95] Exhibit A, p.68, lines 14-14.
[96] Exhibit A, p. 69, lines 10-25, p. 70, lines 1-5.
[97] Exhibit A, p.78, lines 9-25, p.79, lines 1-23.
[98] *Id.* at p.78, lines 9-25.
[99] *Id.* at p. 79, lines 12-25, p. 80, lines 1-4.
[100] *Id.* at p. 82, lines 12-19.
[101] Exhibit A, p.44, lines 11-14.
[102] *Id.* at p.46, lines 10-12.
[103] *Id.* at p.33, lines 3-25.
[104] *Id.* at p.34, lines 10-14.

Plaintiff was never demoted or threatened with demotion.[105]  Plaintiff was reassigned to different

drops at various times, but Plaintiff does not believe that these reassignments were based on his

race.[106]  Plaintiff suffered no unwarranted adverse action.

Furthermore, Plaintiff cannot show that his employer failed to take remedial action.

When Plaintiff complained about his coworker's "black bitch" comment, an investigation was

conducted and the employee allegedly responsible for the comment was transferred to another

area of the prison.[107]  When Plaintiff filed a grievance against his supervisor, Capt. Lemoine,

Plaintiff admits he was moved to another area of the prison.[108]  Moreover, defendant considered

Plaintiff's grievances and responded to them in writing.[109]

Accordingly, defendant is entitled to judgment as a matter of law on Plaintiff's claims of

harassment.  This Court should grant summary judgment in favor of defendant on Plaintiff's

harassment claim.

### e.  Plaintiff cannot prove his retaliation claim
#### i.  Law

As a matter of law, Plaintiff cannot prove his retaliation claim.  Title VII contains an anti-

retaliation provision that forbids employer actions that discriminate against an employee (or even

a job applicant) because he has opposed a practice that Title VII forbids or has "made a charge,

testified, assisted or participated in" a Title VII investigation, proceeding or hearing.[110]  To

establish a *prima facie* case of retaliation, the plaintiff must show three elements: 1) the plaintiff

participated in a statutorily protected activity, 2) he received an adverse employment action, and

---

[105] *Id.* at p.34, lines 15-19.
[106] *Id.* at p.35-36, lines 1-25,
[107] *Id.* at p. 59, lines 10-17.
[108] Rec. Doc. 1 ¶ 10.
[109] Exhibit N.
[110] *Burlington Northern & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 60 (2006).

3) a causal connection exists between the protected activity and the adverse action.[111]  If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[112]

A plaintiff engaged in protected activity if 1) he opposed an unlawful employment practice under Title VII or 2) he "made a [Title VII] charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."[113]  To oppose an unlawful employment practice, a plaintiff has to show that he had an objectively reasonable belief that his employer was engaged in unlawful employment practices.[114]  If the activity about which the employee complains is not actionable under Title VII, then a plaintiff may not maintain a claim for "opposition clause" retaliation.[115]

Only "ultimate employment decisions such as hiring, granting leave, discharging, promoting or compensating" rise to the level of an adverse employment action.[116]  "Undesirable work assignments are not adverse employment actions."[117]  Additionally, accusations of wrongdoing and denials of requested shifts are not adverse actions actionable under Title VII.[118]

When determining whether causation exists, the court considers three indicia of causation: 1) the absence of any reference to the conduct at issue in the employee's disciplinary

---

[111] *Evans v. City of Houston*, 246 F.3d 344, 351-52 (5th Cir. 2001)(internal citations omitted).

[112] *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001).

[113] *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)(quoting 42 U.S.C. § 2000e–3(a)).

[114] *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296-97 (5th Cir. 2011)(citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir.2000)).

[115] *Harvey v. Chevron U.S.A., Inc.*, 961 F. Supp. 1017, 1032-34 (S.D. Tex. 1997)(citing *See Sarff v. Continental Express*, 894 F.Supp. 1076, 1082 (S.D.Tex.1995), *aff'd*, 85 F.3d 624 (5th Cir.1996)).

[116] *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir. 2003)(quoting *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999)(citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997))); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)(quoting *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.2003)).

[117] *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 555 (5th Cir.1997).

[118] *See Benningfield v. City of Houston*, 157 F.3d at 377-78 (5th Cir.1998) (holding that changes in work hours, denials of requested shifts, accusations of theft and sabotage, and undermining an employee's performance by preventing people from speaking to her are not adverse employment actions); *Webb v. Cardiotoracic Surgery Assocs. of N. Tex.*, 139 F.3d 532, 540 (5th Cir.1998) (holding that rude and uncivil treatment is not an adverse employment action)(abrogated on other grounds).

records, 2) deviation from the employer's customary policies and procedures in terminating the employee and 3) temporal proximity between the protected conduct and the adverse employment action.[119]  "'[T]he mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case [of retaliation].'"[120]  If there is a long period of time in between the protected activity and the alleged retaliation, then the causation element is not met.[121]  A five month lapse is too long a time period to meet the causation element.[122]

Additionally, the Supreme Court recently held that in a Title VII retaliation claim, the plaintiff must prove that "but for" the protected activity, the adverse action would not have occurred.[123]

### ii.  Analysis
#### 1.  Plaintiff's alleged instances of retaliation
##### a.  Plaintiff's informal, verbal complaints do not rise to the level of activity protected under Title VII

Plaintiff believes that many of the instances he complains of occurred because he complained.  Plaintiff alleges he verbally complained all the time about the different drops he was given, not being promoted, not being in "certain positions," favoritism by his supervisor, "nonfavorable relationships with the black and white employees" and about "race relations."[124]  Defendant shows Plaintiff's coworkers and supervisors agree that Plaintiff was a complainer, but

---

[119] *Pryor v. MD Anderson Cancer Center*, 495 Fed. Appx. 544, 547, 2012 WL 5360453, *3 (5th Cir. Nov. 1, 2012) (citing *Nowlin v. Resolution Trust Corp.*, 33 F. 3d 498, 508 (5th Cir. 1994)).
[120] *Raggs v. Miss. Power & Light*, 278 F.3d 463, 471 (5th Cir. 2002) (quoting *Swanson v. General Serves. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997)).
[121] *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454-55 (5th Cir. 2013); *Raggs v. Miss. Power & Light*, 278 F.3d 463, 471-72 (5th Cir. 2002)(five months lapse insufficient to show retaliation); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994)(ten months lapse does not support causation element).
[122] *Raggs*, 278 F.3d at 471-72.
[123] *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013).
[124] Exhibit A, p.63, lines 5-22, p.87, lines 4-12.

not about race or discrimination.[125]   Simply complaining about your work assignments, not getting a promotion, not being in "certain positions" and favoritism does not rise to the level of opposing an unlawful employment practice; even if true, changing work assignments and favoritism are not unlawful practices under Title VII.[126]   As such, Plaintiff's alleged verbal complaints about favoritism, not getting a promotion, not being in "certain positions" and his different work assignments were not protected activity.

Not only does defendant show Plaintiff did not complain about race discrimination, but even taking Plaintiff's allegation that he complained about "race relations" and "nonfavorable relationships with the black and white employees" as true, Plaintiff's activity is not protected.[127] Defendant shows Plaintiff's coworkers were not aware of these complaints.[128]   Even if true, Plaintiff's complaints about "race relations" and "nonfavorable relationships with the black and white employees" are too vague to be considered opposing an unlawful practice.[129]   What Plaintiff really complains about is that he believed Capt. Lemoine showed favoritism to other employees by having a "party group" of coworkers.[130]   Defendant shows Plaintiff was mistaken as Capt. Lemoine did not socialize with his subordinates other to carpool to work on occasion.[131]

### b.  Defendant's actions are not adverse employment actions

Even taking Plaintiff's assertions as true, his assertions regarding "unfavorable" drop assignments, his vehicle being searched and false accusations by inmates simply do not rise to

---

[125] Exhibits D, E and G.
[126] *See Gollas v. Univ. Of Texas Health Sci. Ctr. At Houston*, 425 F. App'x 318, 322-23 (5th Cir. 2011)(finding that verbal complaints were too vague to show Plaintiff engaged in protected activity to support an opposition claim); *Jimenez v. Potter*, 211 Fed.Appx. 289, 290 (5th Cir.2006) (finding no protected activity where plaintiff claimed demotion in retaliation for filing workers' compensation claim where such claim not protected under Title VII); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 (5th Cir.2003) (finding favoritism while unfair was not an unlawful employment practice under Title VII).
[127] Exhibits D, E and G.
[128] Exhibits D, E, G and H.
[129] *See Gollas v. Univ. Of Texas Health Sci. Ctr. At Houston*, 425 F. App'x 318, 322-23 (5th Cir. 2011)(finding that verbal complaints were too vague to show Plaintiff engaged in protected activity to support an opposition claim).
[130] Exhibit A, p. 62, lines 7-15, p.76, lines 14-22.
[131] Exhibit D.

the level of an adverse action sufficient to support a retaliation claim under Title VII. As a matter of law, a change in work assignment does not rise to the level of an adverse employment action.[132] Likewise, Plaintiff's allegation that his vehicle was searched and that inmates accused him of inappropriate conduct also fail to rise to the level of adverse employment actions.[133] As such, Plaintiff's claim that these instances were retaliation should be dismissed.

### c. Plaintiff cannot prove causation and defendant shows legitimate, non-discriminatory reasons for their actions

Even after filing two internal grievances and two EEOC charges, Plaintiff's allegations of retaliation still fail. Plaintiff alleged that because he complained, his vehicle was searched, he was denied promotions, given "unfavorable" work assignments and that officers at Camp RC had inmates give false statements about him.[134] Each of these alleged actions took place prior to Plaintiff's filing an internal grievance with defendant and prior to Plaintiff's filing an EEOC charge.[135] Plaintiff alleges he was not promoted in late 2009 and early 2010, the search of his vehicle occurred on May 15, 2010, and the "unfavorable" work assignments occurred throughout his work at Camp RC.[136] Plaintiff filed two grievances on May 27, 2010 and then an EEOC charge in June 2010.[137] Defendant could not take retaliatory action against Plaintiff *before* learning of Plaintiff's protected activities.

Furthermore, defendant shows legitimate, non-discriminatory reasons for different work assignments and drop locations. Plaintiff was not the only officer who received differing drop

---

[132] *Southard v. Texas Bd. of Crim. Justice,* 114 F.3d 539, 555 (5th Cir.1997)(finding undesirable work assignments are not adverse employment action).
[133] *Benningfield v. City of Houston,* 157 F.3d at 377-78 (5th Cir.1998)(holding accusations of theft and sabotage are not adverse employment action); ; *Webb v. Cardiotoracic Surgery Assocs. of N. Tex.,* 139 F.3d 532, 540 (5th Cir.1998) (holding that rude and uncivil treatment is not an adverse employment action).
[134] Exhibit A, p.70, lines 7-20, p.75, line 25, p.76, lines 1-5, p.60, lines 6-14, p.61, lines 10-12, p.52, lines 22-25, p.54, lines 6-13, p.61, lines 7-12.
[135] Exhibits A, M and N.
[136] Exhibit A, P.38-43, p.48, lines 1-22; Exhibit T; Exhibit M.
[137] Exhibits L and N.

assignments.[138]   Working different drops was just part of the job.[139]   Officers were assigned

different drops depending on the needs of the prison, the needs of security.[140]   Plaintiff was not

singled out or assigned different drops because of his verbal complaints; he was assigned

different drops because he was an officer at a prison.   The only evidence Plaintiff has to show

that he was moved around to different drop assignments because he complained are documents

showing he was assigned different drops.[141]   Plaintiff cannot prove that he was given varied work

assignments or drop locations "but for" his verbal complaints.

Plaintiff's allegation that he was not promoted because of his verbal complaints must also

fail.[142]   Plaintiff has no evidence to show that he was not promoted because he verbalized

complaints.[143]   Plaintiff's only evidence that he was not promoted because of his verbal

complaints is his own self-serving opinion that it is a "known fact" that when one voices an

opinion, then "they call you going against the system."[144]   Additionally, defendant shows a

legitimate, non-discriminatory reason for denying Plaintiff a promotion.   Plaintiff was denied

promotions because he was not suitable supervisor material.   Plaintiff was a whiner who refused

to take responsibility for his actions.[145]   Plaintiff was not a team player and did not get along

with his coworkers.[146]   Plaintiff was clearly not the type of individual one would promote to a

supervisory position.   Plaintiff cannot show that his verbal complaining was the "but for" reason

for his not being promoted.

---

[138] Exhibit A, p.36, lines 14-25, p.37, lines 1-6, p.38, lines 7-25, p.39-40; Exhibits D, G and K.
[139] Exhibits D and G.
[140] Exhibits D and E.
[141] Exhibit A, p.63, lines 23-25, p.64, lines 1-6.
[142] Exhibit A, p.54, lines 3-13, 23-25, p.55, lines 1-9, p.57 lines 9-11.
[143] *Id.* at p.56, lines 13-18.
[144] *Id.* at p.55, lines 18-23, p.56, lines 1-11.
[145] Exhibits D, H, F and E.
[146] Exhibits D, E, F , H and I.

Plaintiff has no evidence to support his self-serving testimony that his vehicle was searched because he complained. Plaintiff was not the only individual whose vehicle was searched on May 15, 2010.[147] Defendant shows employees of different races had their vehicles searched.[148] Plaintiff was not singled out as he alleges. Additionally, Plaintiff has no evidence that his vehicle was searched because he complained.[149]

Plaintiff alleged that some officers at Camp RC prompted inmates to give "statements that [Plaintiff] was having homosexual activities with" the inmates.[150] Plaintiff admitted that there were investigations conducted into these inmates' allegations.[151] The investigations cleared Plaintiff of any misconduct with inmates.[152] Plaintiff testified that he thought that Capt. Lemoine, Jason Johnson and Mike Rabalais were the individuals who were able to get the inmates to complain about Plaintiff.[153] Plaintiff believes that these individuals caused the inmates to complain about Plaintiff so that Plaintiff would be moved to another work location.[154] Defendant shows the proper procedure for when an inmate alleges some kind of sexual misconduct on the part of an officer is for there to be an investigation.[155] An allegation about sexual misconduct on the part of an officer is a serious allegation and must be investigated.[156] Additionally, in response to a request for evidence for his allegation that officers at LSP prompted inmates to give false statements, Plaintiff produced no evidence to support this allegation.[157]

---

[147] Exhibit M.
[148] *Id.*
[149] Exhibit A, p.62, lines 16-19.
[150] Exhibit A, p.70, lines 7-20.
[151] Exhibit A, p.70, lines 21-25.
[152] *Id.* at p.71, lines 10-19.
[153] *Id.* at p.71, lines 20-25, p.72, lines 1-13.
[154] *Id.*
[155] Exhibit D.
[156] *Id.*
[157] *See* Exhibit U.

As such, Plaintiff cannot prove his claim of retaliation. The summary judgment evidence shows there is no disputed issue of material fact that Plaintiff cannot prove his claim as a matter of law. Accordingly, Plaintiff's claim of retaliation should be dismissed.

### 2. Plaintiff's two EEOC charges

Plaintiff made two claims of retaliation with two separately filed EEOC charges. Each claim will be addressed separately. Plaintiff's first claim of retaliation is found in EEOC charge no. 461-2010-01418.[158] Defendant received a Notice of this Charge on June 3, 2010.[159] Plaintiff finally signed the charge in September 2010 and another Notice was sent to defendant.[160] Plaintiff's second claim of retaliation is found in EEOC charge no. 461-2011-00488 filed on February 8, 2011 in which he asserted he was terminated on November 30, 2010 in retaliation for EEOC charge no. 461-2010-01418.[161]

### a. Plaintiff cannot prove his retaliation claim in EEOC charge no. 461-2010-01418

Plaintiff alleged retaliation in his first filed EEOC charge no. 461-2010-01418.[162] However, as discussed above, Plaintiff did not engage in any protected activity prior to the filing of this charge. Even taking the grievances, Plaintiff filed with LSP as protected activity, Plaintiff cannot meet the causation element of his retaliation claim. The latest date Plaintiff has provided as being denied a promotion is April 2010.[163] Plaintiff filed two grievances on May 27, 2010— after he was denied promotions.[164] The denial of promotions could not be *because* Plaintiff engaged in protected activity. Moreover, as discussed above, defendant shows legitimate, non-

---

[158] Exhibit L.
[159] *Id.*
[160] *Id.*
[161] Exhibit S.
[162] Exhibit L.
[163] Exhibit T.
[164] Exhibit N.

discriminatory reasons for the alleged instances of retaliation. Plaintiff cannot prove that "but for" his engaging in protected activity, the adverse action would not have occurred.

### b. Plaintiff's allegation of retaliation in his second EEOC charge no. 461-2011-00488

Plaintiff filed a second EEOC charge in February 2011.[165] The Notice of Right to Sue Letter was just mailed on February 14, 2014.[166] In his second charge, Plaintiff asserted he was discharged on November 29, 2010 for filing an EEOC charge in June 2010.[167]

Defendant received Notice of Plaintiff's first charge on June 3, 2010.[168] Plaintiff was discharged on November 29, 2010; five months and 29 days elapsed between defendant's knowledge of Plaintiff's first EEOC charge and his termination.[169] As a matter of law, this period of almost six months is insufficient for Plaintiff to prove the causation element of his claim.[170] As such, Plaintiff cannot meet the causation element of his retaliation claim and it must be dismissed.

Moreover, defendant shows legitimate non-discriminatory reasons for terminating Plaintiff. Plaintiff was terminated for signing inmates' names to a Yard Refusal Form. Plaintiff worked at Camp RC at LSP. Camp RC housed inmates on extended lockdown.[171] Inmates in Camp RC were given one hour of yard time.[172] An inmate could choose not to go on the yard, but, if so, the inmate would sing the Yard Refusal Form indicating that he refused his yard time.[173] At times an inmate would refuse his yard time and refuse to sign the Yard Refusal

---

[165] Exhibit S.
[166] *Id.*
[167] *Id.*
[168] Exhibit L, p.10. For some reason, Plaintiff filed his charge on or before June 3, 2010, but did not actually sign the charge until September 2010. Regardless, defendant received a Notice of the Charge in June 2010.
[169] Exhibit Q.
[170] *Raggs*, 278 F.3d at 471-72.
[171] Exhibit D.
[172] Exhibits D.
[173] Exhibits D, F, G, H, K and O.

Form. When this occurred, the officer writes "refused to sign" and initial to indicate that the inmate refused to sign the form.[174] The officer then gets another officer to initial indicating that, indeed, the inmate refused to sign the Yard Refusal Form.[175] Plaintiff followed none of these procedures.[176] Instead, Plaintiff signed the inmates' names on the form. Plaintiff did not write "refused to sign"; he did not initial or have another officer initial.[177] Plaintiff's falsifying documents was a serious offense. Falsifying documents is such a serious offense, that when Plaintiff's supervisor failed to catch Plaintiff's falsified documents when he reviewed them, he was verbally counseled.[178]

By signing offenders' names, Plaintiff falsified the Yard Refusal Form. Falsifying documents is a terminable offense at LSP.[179] There is no other discipline for an employee who falsifies a document other than termination.[180] As such, defendant shows Plaintiff was terminated for legitimate, non-discriminatory reasons. Accordingly, Plaintiff's retaliation claim should be dismissed.

### f. Defendant shows Plaintiff received adequate due process
#### i. Substantive due process

Defendants show that Plaintiff cannot prove his allegation of a due process violation. In the public employment context, a substantive due process violation occurs when 1) the plaintiff had a cognizable property interest in his continued employment and 2) the employer's termination of that interest was arbitrary and capricious.[181] Under Louisiana law, tenured or

---

[174] Exhibits F, G, H, K and O.
[175] Exhibits F, H, K and O.
[176] *See* Exhibit Q.
[177] Exhibit Q.
[178] Exhibits D, H and X.
[179] Exhibit E and I.
[180] Exhibit E.
[181] *Shearer v. Bowen*, 216 F.3d 1080 (5th Cir. 2000); *Bluitt v. Houston Indep. Sch. Dist.*, 236 F. Supp. 2d 703, 731-32 (S.D. Tex. 2002) (citing *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Conner v. Lavaca*

classified civil servant status is recognized as a property right that may not be deprived without due process of law.[182] Substantive due process "requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest."[183]

Here, defendant exercised its professional judgment in a non-arbitrary and non-capricious manner. As discussed above, Plaintiff's falsification of documents was a serious offense. The documents used at LSP are legal documents and are sometimes used in lawsuits filed by inmates.[184] Thus, it is important for the documents to be filled out correctly and accurately.[185] Defendant did not arbitrarily terminate Plaintiff for falsifying documents; defendant terminates all employees who falsify documents as a matter of course.[186] Defendant's reason for terminating Plaintiff was legitimate and non-discriminatory. Accordingly, Plaintiff's substantive due process rights were not violated by defendant's actions.

## ii. Procedural due process

Defendant shows Plaintiff was afforded adequate procedures. The first step for a procedural due process claim is to determine whether the employee had a property interest in his job.[187] Under Louisiana law, tenured or classified civil servant status is recognized as a property

---

*Hosp. Dist.,* 267 F.3d 426, 429 (5th Cir.2001); *Lollar v. Baker,* 196 F.3d 603, 607 (5th Cir.1999) (citing *Texas v. Walker,* 142 F.3d 813, 818 (5th Cir.1998), *cert. denied,* 525 U.S. 1102, 119 S.Ct. 865, 142 L.Ed.2d 768 (1999); *Spuler v. Pickar,* 958 F.2d 103, 107 (5th Cir.1992)); *Brown v. Texas A & M Univ.,* 804 F.2d 327, 335 (5th Cir.1986); *accord Bryan v. City of Madison,* 213 F.3d 267, 275 (5th Cir.2000), *cert. denied,* 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001)); *Christian v. City of Dallas,* 64 F. Supp. 2d 617, 625 (N.D. Tex. 1999).

[182] *See Bell v. Department of Health & Human Resources,* 483 So.2d 945, 949-50 (La.1986).

[183] *Bluitt v. Houston Indep. Sch. Dist.,* 236 F. Supp. 2d 703, 731-32 (S.D. Tex. 2002)(citing *Texas v. Walker,* 142 F.3d 813, 818 (5th Cir.1998)),

[184] Exhibit I.

[185] *Id.*

[186] Exhibit E.

[187] *Bluitt v. Houston Indep. Sch. Dist.*, 236 F. Supp. 2d 703, 733-34 (S.D. Tex. 2002)(citing *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Roth,* 408 U.S. at 569–70, 92 S.Ct. 2701; *see also Findeisen v. North East Indep. Sch. Dist.,* 749 F.2d 234, 237 (5th Cir.1984) (in order to determine whether plaintiff has presented a procedural due process claim, the court must determine if the plaintiff was "deprived of a protected property interest and, if so, was the deprivation accomplished without adherence to due

right that may not be deprived without due process of law.[188]  Once a property interest or right is found, then the Court looks to see what process is due.[189]  The fundamental processes required are notice and an opportunity to respond.[190]  The opportunity to respond may be provided in written form or given orally; the opportunity to respond is the employee's opportunity to explain why the proposed action should not be taken.[191]  An informal hearing which permits an employee to offer his side of the story satisfies the requirements of due process.[192]  Procedural due process does not require that employees "be afforded all the procedural safeguards found in a "trial-type" hearing."[193]

Here, Plaintiff was issued a V-1 for his action in falsifying the Yard Refusal Form on July 15, 2010 and then given a hearing on that VR-1.[194]  Prior to his termination, Plaintiff was given notice of the VR-1 and the hearing.[195]  The supporting evidence for the VR-1 was attached to the VR-1.[196]  At the hearing, Plaintiff was allowed to respond in the form of a statement and he did so in the form of a verbal statement.[197]  As a matter of law, defendant satisfied the requirements of due process by 1) providing Plaintiff with notice, 2) explaining the nature of the

process minimums") (citing *Logan,* 455 U.S. at 428, 102 S.Ct. 1148); *Brown v. City of Galveston,* 870 F.Supp. 155, 158 (S.D.Tex.1994) (finding that "[i]n order to establish a claim of denial of procedural due process, a Plaintiff must prove that [he] had a constitutionally protected property or liberty interest that has been infringed by the Defendant")).
[188] *See Bell v. Department of Health & Human Resources,* 483 So.2d 945, 949-50 (La.1986).
[189] *Bluitt,* 236 F. Supp. 2d at 733.
[190] *Id.*
[191] *Id.* (citing *Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487; *see Helton v. Clements,* 832 F.2d 332, 337 (5th Cir.1987); *see also Browning v. City of Odessa,* 990 F.2d 842, 844 (5th Cir.1993) ("before dismissing [a public] employee, the employer need only provide the employee with written or oral notice of the charges raised against him, explain to the employee the nature of the evidence of those charges, and afford the employee an opportunity to respond") (citing *Helton,* 832 F.2d at 337); *Price v. Brittain,* 874 F.2d 252, 261 (5th Cir.1989) (same)).
[192] *Id.* (citing *Browning,* 990 F.2d at 844 (citing *Loudermill,* 470 U.S. at 546 n. 8, 105 S.Ct. 1487)).
[193] *Id.* (citing *See Robison v. Wichita Falls & North Tex. Cmty. Action Corp.,* 507 F.2d 245, 252 (5th Cir.1975).
[194] Exhibits D, E, J and Q.
[195] Exhibit R.
[196] Exhibit Q.
[197] Exhibit Q; Exhibit E.

evidence of the VR-1 and 3) giving Plaintiff an opportunity to respond.[198]  The recommendation

to terminate Plaintiff was made at the hearing by Assistant Warden Joseph Lamartiniere.[199]

Furthermore, defendant shows Plaintiff was allowed to appeal the results of his first level

hearing.[200]  He was allowed to appeal after the second level hearing to the third level, the

Secretary's office—at the Department of Corrections' headquarters.[201]  Plaintiff also had the

ability to appeal to Civil Service.[202]  If he disagreed with the Civil Service results, his next step

would be to appeal to the First Circuit Court of Appeals.[203]

Defendant afforded Plaintiff procedural protections which were more than adequate for

what the situation demanded.  As a matter of law, defendant is entitled to summary judgment on

Plaintiff's claims of due process violations.

### g.  Plaintiff cannot prove his emotional distress claim
#### i.  Law

Plaintiff also alleges that defendant caused him "emotional distress."[204]  Summary

judgment is the appropriate time to consider an employee's allegations of emotional distress.

Courts have held that summary judgment is the proper procedural method to consider an

employee's allegation that her injury resulted from an intentional act of his employer.[205]  There is

"no reason why [summary judgment] should not also be a proper procedural method to consider

a plaintiff's allegation that a defendant is liable for the intentional infliction of emotional distress,

---

[198] *Browning v. City of Odessa,* 990 F.2d 842, 844 (5th Cir.1993) ("before dismissing [a public] employee, the employer need only provide the employee with written or oral notice of the charges raised against him, explain to the employee the nature of the evidence of those charges, and afford the employee an opportunity to respond").
[199] Exhibit E; Exhibit Q.
[200] Exhibit E; Exhibit Q.
[201] Exhibit Q; Exhibit W.
[202] Exhibit J.
[203] *Id.*
[204] Rec. Doc. 1.
[205] *Barrino v. East Baton Rouge Parish School Bd.*, 697 So.2d 27 (La. App. 1 Cir., 1997); *see also Carey v. UMC (United Mechanical Contractors),* 553 So.2d 472 (La.1989); *Landry v. Uniroyal Chemical Company, Inc.*, 94-1274, p. 7 (La. App. 1st Cir. 3/3/95); 653 So.2d 1199, 1202, writ denied, 95-1381 (La. 9/15/95); 660 So.2d 461; *King v. Schuylkill Metals Corporation*, 581 So.2d 300, 302 (La. App. 1st Cir.), writ denied, 584 So.2d 1163 (La. 1991).

especially in light of the additional burden such a plaintiff has of showing that the conduct was extreme and outrageous."[206]

To state a claim for intentional infliction of emotional distress, a plaintiff must establish 1) the defendant's conduct was extreme and outrageous, 2) the emotional distress experienced by the plaintiff was severe and 3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from the conduct.[207] Louisiana's Supreme Court defined the type of conduct that supported a claim for intentional infliction of emotional distress:

> "The [defendant's] conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, to occasional acts that are definitely inconsiderate and unkind."[208]

Over the years, Louisiana courts have considered what kinds of behavior do and do not rise to the level of outrageous and extreme.[209] The jurisprudence has limited intentional infliction of emotional distress to cases involving a pattern of deliberate, repeated harassment over a period of time.[210] The distress suffered by the plaintiff must be more than a reasonable person could be expected to endure.[211] Furthermore, the defendant's conduct must be *intended*

---

[206] *Barrino v. East Baton Rouge Parish School Bd.*, 697 So.2d 27 (La. App. 1 Cir., 1997).
[207] *See White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).
[208] *Id.*
[209] *Nicholas v. Allstate Ins. Co.*, 1999-2522 La. 8/31/00, 765 So.2d 1017, 1027-28.
[210] *Id.* at 1026 (citing *White*, 585 So.2d at 1205; *Maggio v. St. Francis Med. Ctr., Inc.*, 391 So.2d 948 (La.App. 2 Cir. 1980)).
[211] *Id.* at 1027.

to cause severe emotional distress and "not just some lesser degree of fright, humiliation, embarrassment or worry."[212]

For example, in *Stewart v. Parish of Jefferson*, the court found that two years of harassment by a supervisor who questioned the employee's personal life, increased the employee's workload and pressured the employee into accepting a demotion which led to the employee's termination did not constitute extreme and outrageous behavior.[213] In *Beaudoin v. Hartford Acc. & Indem. Co.*, the court held that even when an employee was subjected to eight months of verbal abuse by her supervisor in which he shouted at her, cursed her, called her names, commented on the inferiority of women and falsely accused her of making mistakes, the supervisor's behavior did not rise to the level of extreme and outrageous conduct.[214]

### ii. Analysis

Here, Plaintiff asserts a claim of intentional infliction of emotional distress.[215] Even if this Court were to accept Plaintiff's allegations as true, defendant's actions are neither extreme nor outrageous. Nor do these actions rise to the level of a pattern of deliberate, repeated harassment.

Plaintiff contends that he was given different assignments and drops while employed at LSP, had his supervisor hit his desk once, was denied a promotion more than once, had a coworker call him a "black bitch" once, had another coworker tell him "your kind" once and a third coworker make a comment about "your type" on another occasion. Even taking Plaintiff's allegations as true for the purposes of this motion, none of these actions compare with the actions

---

[212] *Id.* (citing *White*, 585 So.2d at 1210); *Barrino v. East Baton Rouge Parish School Bd.*, 697 So.2d 27 (La. App. 1 Cir., 1997) (quoting *White* at 1209-1210); *Roscoe v. Hastings*, 999 So.2d 1218 (La. App. 2 Cir., 2009) (quoting *White v. Golden*, 585 So.2d 1205 (La.1991)).
[213] 95-407 (La.App. 5 Cir. 1/30/96), 668 So.2d 1292.
[214] 594 So.2d 1049 (La. App. 3 Cir. 1992).
[215] Rec. Doc. 1.

of defendants in *Beaudoin* or *Stewart*. None of these actions rise to level of the actions of defendants in *Beaudoin* or *Stewart*. The actions of defendants in *Beaudoin* and *Stewart* were far more egregious than the alleged actions of defendant in this case; yet, in *Beaudoin* and *Stewart*, the court held that the defendants' actions did not rise to the level of extreme or outrageous. As such, here, defendant's actions do not rise to the level of extreme or outrageous. Because he cannot prove that defendant's actions were extreme or outrageous, Plaintiff's claim of emotional distress should be dismissed.

Plaintiff's allegations of defendant's conduct are not even on par with the actions of defendants in *Beaudoin* or *Stewart*. The actions in *Beaudoin* or *Stewart* are more offensive and more pervasive than the actions Plaintiff alleges. Even though the actions in *Beaudoin* or *Stewart* were more offensive and pervasive than Plaintiff's situation, the court did not find the actions to be extreme and outrageous. Accordingly, defendant's alleged actions against Plaintiff simply do not rise to the level of extreme and outrageous. As such, Plaintiff's claim for intentional infliction of emotional distress must be dismissed.

Additionally, there is no evidence that defendant desired or intended to inflict severe emotional distress or that defendant knew or would be certain that severe emotional distress would result from any alleged conduct.

Accordingly, defendant is entitled to judgment as a matter of law on Plaintiff's claim for emotional distress. Defendant has shown there is no genuine issue as to material fact on Plaintiff's emotional distress claim; defendant further demonstrated it is entitled to judgment as a matter of law on Plaintiff's intentional infliction of emotional distress claim. Thus, the Court should grant summary judgment in favor of defendant on Plaintiff's claim of emotional distress.

## III.    CONCLUSION

For the foregoing reasons, summary judgment should be granted in defendant's favor.


Respectfully submitted,

**JAMES "BUDDY" D. CALDWELL
ATTORNEY GENERAL**

**BY**:    **/s/       _Margaret A. Collier_____**
**MARGARET A. COLLIER (33790)**
**Assistant Attorney General**
**Dept. of Justice/Litigation Division**
1885 North Third Street, 4th Floor
Post Office Box 94005
Baton Rouge, Louisiana 70804-9005
Telephone No. 225-326-6300
Facsimile No.  225-326-6495
E-Mail Address: collierma@ag.state.la.us

## CERTIFICATE OF SERVICE

**I CERTIFY** the foregoing was served on counsel for the plaintiff by electronic notification by CM/ECF on March 4, 2014.

Gurney Alfred through his attorney of record
Dan Scheurmann
600 America Street
Baton Rouge, Louisiana 70802-5903        _Margaret A. Collier_____
                                             **Margaret A. Collier**