UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

GURNEY ALFRED

VERSUS

STATE OF LOUISIANA THROUGH THE
DEPARTMENT OF CORRECTIONS

CIVIL ACTION

NO. 12-801-JJB-SCR

**RULING ON DEFENDANT'S PARTIAL MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on two Motions (docs. 21 & 22) for Partial Summary Judgment brought by Defendant, State of Louisiana through the Department of Corrections ("DOC"). Plaintiff, Gurney Alfred ("Alfred"), has filed oppositions to both motions (docs. 26 & 31, respectively), to which DOC has filed a reply (doc. 34). The Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. Oral argument is unnecessary. For the reasons stated herein, DOC's Motions (docs. 21 & 22) for Partial Summary Judgment are GRANTED.

I.  **Background**

Alfred was employed by DOC and worked as a correctional officer at the Louisiana State Penitentiary ("LSP" or "Angola") in Angola, Louisiana. Alfred was ranked as a Master Sergeant ("MSgt.") and was assigned to an area of LSP called Camp RC, where inmates in extended lockdown were housed. During his tenure at LSP, Alfred was supervised by Lieutenant Bryan Myers ("Lt. Myers") and Captain Warren Lemoine ("Capt. Lemoine").

The basis of this suit is grounded upon several allegations of racially motivated and retaliatory incidents which occurred during Alfred's tenure at LSP. First, Alfred alleges that his white coworkers used racially coded language towards him on several occasions. Specifically, one coworker called him a "black bitch," another told him that he would teach dogs "to attack your kind," and yet another said to him that "I don't play with your type." In addition to the

1

racially derogatory language directed towards him by his coworkers, Alfred alleges that he was denied promotions on account of his race.

Alfred also alleges that DOC took retaliatory action against him for filing internal grievances with DOC and complaints with the Equal Employment Opportunity Commission ("EEOC"). As a result of these filed grievances and complaints, Alfred claims that he suffered several adverse employment actions including assignments to undesirable work posts, a search of his vehicle, and ultimately, the termination of his employment.

Based upon these allegations and others, Alfred has brought suit against DOC asserting several claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*, as well as Louisiana state law claims. Specifically, Alfred asserts claims for: (1) race-based harassment and termination; (2) race-based hostile work environment; (3) retaliation; (4) violation of due process under state law; and (5) intentional infliction of emotional distress under state law.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322-23.

### III. Discussion

At the outset, the Court feels compelled to note the utter lack of clarity that pervades Alfred's submissions. Alfred haphazardly and unnecessarily inserts block quotations from cases without explanation and clumsily crafts sentences with quotations from cases or from the record, which at times it is unclear from whence the quotations came. There is a dearth of facts or clearly articulated arguments but a wealth of conclusory statements and speculation. Needless to say, such poorly constructed submissions made the task of resolving the issues on summary judgment quite difficult.

#### A. Prescription of Claims Arising Prior to August 7, 2009

DOC asserts that any claims arising from discrete acts occurring prior to August 7, 2009 are prescribed for failure to exhaust within the prescriptive time period. Though DOC focuses its argument on Alfred's claim that he was denied promotions in 2007 and 2008, it also notes that

any discrete acts occurring prior to the August 7, 2009 date are also prescribed. In response, Alfred contends that his claims are not prescribed under the "continuing violations" doctrine.[1]

Before a plaintiff may file a civil action under Title VII, he must exhaust administrative remedies, which include filing a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1). Discrete acts, such as failure to promote or denial of transfer, must be filed within this time period to be actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002).

Here, Alfred alleges that he was denied a promotion some time in 2007 or 2008. *Alfred Depo*, Doc. 22-3, 48:6-11. He did not file a charge with the EEOC until June 2010. *Id.* at 97:1-6. DOC did not receive notice until June 3, 2010. *Notice of Charge*, Doc. 21-9, at p. 10. Using the June 3, 2010 notice date, DOC identifies August 7, 2009 as being the date upon which prescription began to run. The Court agrees. Accordingly, any discrete act occurring prior to August 7, 2009, including any possible claim for failure to promote in 2007 and 2008, are prescribed and dismissed.

### B. Punitive Damages

Alfred prays for punitive damages against DOC for claims brought under Title VII. DOC correctly asserts that Alfred cannot recover punitive damages as Title VII precludes such a recovery against the state. *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision)..."); *see also Bates v. University of Tex. Medical Branch*, 425

---

[1] The Court will summarily address Alfred's continuing violations doctrine argument. It does not apply. Courts have held that the continuing violations doctrine does not apply to discrete acts such as failure to promote. *See Morgan*, 536 U.S. at 114 (reversing the appeals court's application of the continuing violations doctrine to discrete acts); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001) (quotations omitted) ("These discrete adverse actions, although racially motivated, cannot be lumped together with the day-to-day pattern of racial harassment and therefore, if otherwise untimely, cannot be saved by the continuing violation doctrine.") Given that the facts presented involved discrete acts, the Court declines to apply the continuing violations doctrine.

F.Supp.2d 826, 840 ("Title VII clearly precludes punitive damages awards against governments, government agencies, and political subdivision."). Given this clear prohibition against awarding punitive damages against a state, Alfred cannot recover punitive damages in the present case. Accordingly, DOC is entitled to summary judgment, and Alfred's claim for punitive damages under Title VII is dismissed.

### C. Race Based Discrimination

Title VII makes it unlawful to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race ...." 42 U.S.C. §2000e-2(a)(1). The burden of showing both disparate treatment and discriminatory motive falls on the plaintiff. *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 381 (5th Cir. 1988). The Fifth Circuit has employed two methods for establishing a *prima facie* case of disparate treatment on the basis of race: direct and indirect (or inferential). *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994). The direct method requires evidence which, if believed, "proves the fact [of discriminatory animus] without inference or presumption." *Id*. There is no "direct" evidence of discriminatory intent on the part of the State. Thus, if Alfred is to survive summary judgment, he must do so under the indirect method.

In the case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the Supreme Court articulated a burden shifting framework within which to analyze claims of indirect discrimination. First, the plaintiff must establish a *prima facie* case of racial discrimination by showing that: (1) he belongs to a protected class; (2) he was qualified to do his job; (3) despite his qualifications, his employment situation was adversely affected; and (4) in the case of disparate treatment, other similarly situated employees were treated more favorably.

5

*Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). If the plaintiff does so, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its decision. *Id*. If the defendant can do so, then the burden shifts back to the plaintiff to show that the reason proffered by the defendant is a pretext for discrimination. *Id*.

DOC argues that Alfred's race-based discrimination claim fails at both the *prima facie* and pretext levels. First, DOC argues that Alfred is unable to establish a *prima facie* case because he has failed to identify similarly situated comparators who had experiences nearly identical to his own. Second, DOC argues that Alfred has failed to identify any evidence tending to prove that its proffered legitimate, nondiscriminatory reasons are mere pretext.

In opposition, Alfred identifies two potential comparators: Michael Evans ("Evans") and Michael Rabalais ("Rabalais"). DOC contends that Evans and Rabalais are not proper comparators because their circumstances are not nearly identical to Alfred's. DOC does not contest that Alfred, Evans, and Rabalais are similarly situated. Instead, they aver that Evans' and Rabalais' disciplinary record presents circumstances that are not nearly identical to that of Alfred. The Court agrees.

To show disparate treatment, the plaintiff must demonstrate that "white employees were treated differently under circumstances 'nearly identical' to his." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). Courts have found that employees with different jobs and responsibilities are not similarly situated or in nearly identical circumstances. *See Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000); *Hockman v. Westward Communications, .L.L.C.*, 282 F.Supp2d 512, 528 (E.D. Tex. 2003). Additionally, a plaintiff must demonstrate that his proffered comparators engaged in similar conduct in all relevant

respects. *See Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001) (citing *Little v. Republic Refining Co., Ltd.,* 924 F.2d 93, 97 (5th Cir. 1991).

Here, DOC presents evidence that Alfred was issued a VR-1 for Falsifying Documents, an offense for which he was subsequently fired. Doc. 22-19, Ex. Q, at 7; *see also Lamartiniere Aff.*, Doc. 22-7, Ex. E. The documents that Alfred was charged with falsifying were Yard Refusal Forms. *Lemoine Aff.*, Doc. 22-6, Ex. D. These forms were used by DOC to document when inmates on extended lockdown refused to use their allotted hour of recreation time outside of their cells. *Id.* According to DOC, this was an egregious offense because the falsified documents are oftentimes used by inmates to support their various legal claims in court. *Lamartiniere Aff.*, Doc. 22-7, Ex. E. On the other hand, Evans and Rabalais were disciplined for less minor offenses. Evans was issued a VR-1 and disciplined for placing two different level offenders in the same area at the same time. *Hawkins Aff.*, Doc. 22-12, Ex. J. He also received several VR-1s for attendance issues. *Id.* Rabalais was issued a VR-1 and disciplined for allowing an inmate to carry U.S. mail. *Id.* After reviewing the facts of this case in light of the relevant case law, the Court finds that Evans and Rabalais are not proper comparators because their misconduct involved different types of violations and thus presented circumstances which were not nearly identical to Alfred's. *See Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990) (finding that employees who engaged in different violations of company policy were not nearly identical). Accordingly, Alfred has failed to establish a *prima facie* case and his claim for race-based discrimination must be dismissed.

### D. Hostile Work Environment Claim

To make a *prima facie* case of hostile work environment based upon race, a plaintiff must show that: (1) he is a member of a protected race; (2) he was subjected to harassment; (3) the

7

harassment was based on race; (4) the harassment affected a term or condition of his employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action. *Collins v. Baptist Mem'l. Geriatric Ctr.*, 937 F.2d 190, 195 (5th Cir. 1991). When determining whether a workplace constitutes a hostile work environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). The plaintiff is required to prove more than a few isolated or sporadic incidents of racial animus. *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 293 (E.D. Tex. 1996). "Instead, 'there must be a steady barrage of opprobrious racial comments.'" *Id.* (*quoting Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). A plaintiff must show that the workplace is "permeated with discriminatory intimidation, ridicule, and insult…that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotations marks and citations omitted).

To support his claim for hostile work environment, Alfred relies upon the following incidents of harassment: (1) one coworker called him a "black bitch"; (2) another coworker said, "I don't play with your type"; (3) another coworker told him that he was going to teach dogs how "to attack your kind"; and (4) his supervisor pounded on his desk. DOC argues that Alfred's hostile work environment claims for several reasons, the first of which being that this complained of harassment is not severe or pervasive enough to require Title VII scrutiny. The Court agrees.

As a preliminary matter, the Court did not consider the allegation that Alfred's supervisor, Capt. Lemoine, pounded his fists on Alfred's desk. Alfred has failed to show that this action was performed because of his race. Instead, it was allegedly done in retaliation for Alfred's filing an internal complaint. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 652 (5th Cir. 2012) ("A wide range of behaviors can make a workplace uncivil, but these plaintiffs must show as one of the factors for their Title VII claim that the events were based on race."). As to the remaining incidents, the Court finds that they were not severe or pervasive enough to require Title VII scrutiny. Though "boorish and offensive," the remarks were sporadic and isolated incidents that occurred over a six year period. Such sporadic and isolated incidents cannot be the basis of a Title VII claim. *See Ramsey*, 286 F.3d at 270 (concluding that sporadic allegations of race discrimination cannot be the basis of a Title VII claim); *Yellow Transp.,Inc.*, 670 F.3d at 652 (finding that a few "plainly offensive" remarks occurring over ten year period were not sufficiently severe or pervasive enough to establish a hostile work environment claim). Accordingly, Alfred has failed to establish a *prima facie* race-based hostile work environment claim and therefore, it must be dismissed.

### E. Retaliation Claims

Title VII forbids an employer from "discriminat[ing] against" any employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. §2000e-3(a). To establish a *prima facie* showing of retaliation under Title VII, a plaintiff must show that: (1) he was engaged in a Title VII protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). The plaintiff's

9

*prima facie* showing of retaliation creates an inference of impermissible retaliatory motive. *Greene v. DaimlerChrysler Services of North America*, 128 F. App'x. 353, 356 (5th Cir. 2005). At this point the burden would shift to the defendant to produce a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If it does, the burden shifts back to the plaintiff to show this reason is merely a pretext for retaliation, which it does by showing that the adverse action would not have occurred but for the protected activity. *Id.*

Alfred claims that he was retaliated against for filing several internal grievances and two complaints with the EEOC. This retaliation came in the form of receiving undesirable work assignments, being denied promotions, a search of his vehicle, and termination of his employment. DOC argues that Alfred has failed to establish a *prima facie* case of retaliation for several reasons. DOC argues that Alfred's informal verbal complaints do not rise to the level of protected activity. DOC further argues that with the exception of his discharge, none of the alleged retaliatory actions are adverse employment actions. DOC also argues that Alfred has failed to establish a causal link between engaging in a protected action and the adverse employment action. Finally, as it pertains to his discharge, Alfred has not offered evidence of pretext in light of DOC's proffered legitimate, nondiscriminatory reasons.

After reviewing the evidence presented, the Court finds that DOC is entitled to summary judgment on Alfred's retaliation claims. First, Alfred has failed to establish a *prima facie* case of retaliation for all claims which resulted in actions such as assignments to undesirable work posts and/or shifts and the search of his car. These results and others are not adverse employment actions. *See Benningfield v. City of Houston*, 157 F.3d 369, 376-378 (5th Cir. 1998) (declining to expand the definition of adverse employment actions beyond "discharges, demotions, refusals to hire, refusals to promote, and reprimands," to include, *inter alia*, changes in work shifts or

accusations of theft and sabotage). The actionable adverse employment actions are retaliatory denial of promotion and discharge.

The DOC correctly argues that Alfred's failure to promote claim fails for lack of causation. Alfred filed two internal grievances on May 27, 2010 for incidents which occurred on May 15, 2010 and May 24, 2010. *DOC Ex. N*, Doc. 22-16, at pp. 6, 9. Additionally, Alfred filed a complaint with the EEOC around June 3, 2010. *DOC Ex. L*, Doc. 22-14, at p. 10. Alfred alleges that he was denied promotions in late 2009 and early 2010. *Alfred Depo.*, Doc. 22-3, Ex. A, at 48:6-14. Alfred filed grievances *after* he was allegedly denied promotions, which means that DOC could not have retaliated against Alfred since there would have been no impetus for such retaliation. *See Jimenez v. Potter*, 211 F. App'x 289, 291 (5th Cir. 2006) (finding that a complaint filed after the demotion could not possibly be the result of the plaintiff's complaint). Therefore, Alfred has failed to establish a causal link between his complaints and his denial of promotions.

Even assuming *arguendo* that Alfred has established a *prima facie* case of retaliation for his retaliatory denial of promotion and discharge claims, he has failed to adduce evidence of pretext in light of DOC's legitimate, nondiscriminatory reasons for its actions. DOC has stated and presented evidence to support that Alfred was not promoted because it did not believe that he would make a suitable supervisor given his perceived poor attitude and inability to work well with the rest of the team. *See DOC Exs. D, E, F, H.* As to the retaliatory discharge claim, DOC's stated justification for Alfred's discharge was his failure to follow prison procedure. Specifically, DOC determined that Alfred falsified Yard Refusal Forms by signing an inmate's name instead of following the procedure which required him to write "refused to sign," initial the form, and have another officer also initial the form. *Lemoine Aff.*, Doc. 22-6, Ex. D. DOC found

11

this to be a terminable offense given that Yard Refusal Forms are oftentimes used as evidence in prisoner litigation. *Dupont Aff.,* Doc. 22-11, Ex. I. The Court finds that DOC has proffered legitimate, nondiscriminatory reasons for its actions.

The burden now shifts to Alfred to prove that these reasons are merely pretext for an unlawful, retaliatory motive. Alfred has failed to satisfy this burden. Instead, he relies upon conclusory statements, unsupported by the evidence, and speculation. This is insufficient to raise a genuine issue of material fact as to pretext.

In sum, Alfred's retaliation claims fail either at the *prima facie* or pretext level of the analysis. Accordingly, DOC is entitled to summary judgment on all of Alfred's retaliation claims.

### F. Due Process Claim

DOC kindly characterizes Alfred's due process claim as one resulting from the termination of his employment. It is not. In his Complaint, Alfred alleges that he "was denied due process to have his grievances heard and resolved without fear of reprisal in violation of the First Amendment to the U.S. Constitution." Doc. 1, at ¶ 10. This is not a cognizable claim and therefore, must be dismissed.

### G. Intentional Infliction of Emotional Distress Claim

Under Louisiana law, a plaintiff may recover for intentional infliction of emotional distress ("IIED") by showing:

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). The conduct "must be so outrageous in character, as to go beyond all possible bounds of decency" and must be "regarded as atrocious

and utterly intolerable in a civilized community." *Id.* "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not provide a basis for an IIED claim. *Id.* "The distress suffered by the employee must be more than a reasonable person could be expected to endure." *Nicholas v. Allstate Insurance Co.*, 765 So.2d 1017, 1027 (La. 2000). Finally, "[l]iability can arise only where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct." *White*, 585 So.2d at 1210. "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.*

DOC argues that Alfred's allegations, which include receiving undesirable work assignments, being denied promotions, and being the target of racially charged language, neither arises to the level of extreme or outrageous nor establishes a pattern of deliberate and repeated harassment. Alfred responds by making several nonsensical and conclusory statements.

It is well settled that mere employment disputes ordinarily will not substantiate an IIED claim. *See Griffith v. Louisiana*, 808 F.Supp.2d 926, 935 (E.D. La. 2011) ("IIED claims will not lie for mere employment disputes since an employer must be free to demote, transfer, discipline, and terminate employees even though such actions will undoubtedly be unpleasant and cause emotional distress."); *Barber v. Marine Drilling Mgt.*, No. 01-1986, 2002 WL 237848, *8 (E.D. La. Feb. 15, 2002) ("Conduct in the workplace, even if calculated to cause some degree of mental anguish, will rarely be so severe that it will rise to the level of 'outrageous conduct.'"); *Nicholas*, 765 So.2d at 1026 (cataloguing cases in which plaintiffs were unable to establish facts sufficient to constitute IIED). This holds true even for cases involving claims of discrimination and/or harassment. *See Tate v. Louisiana Dep't of Transp. and Development*, Civil Action No.

11-1212, 2013 WL 796015 *21 (E.D. La. Mar. 4, 2013) ("Employment disputes, even those involving discrimination and harassment, will rarely rise to the level of intentional infliction of emotional distress."); *Washington v. Mother Works, Inc.,* 197 F.Supp.2d 569, 572-73 (E.D. La. 2002) (finding that repeated racial slurs, ridicule for missing work to care for a cancer-stricken mother, experiencing different treatment than other managers, and termination did not rise to a level of extreme and outrageous conduct such that plaintiff would prevail on her IIED claim); *Stewart v. Parish of Jefferson*, 668 So.2d 1292, 1294 (La. App. 5th Cir. 1996) (affirming the trial court's finding that IIED was not shown despite the plaintiff suffering two years of harassment in which his supervisor questioned the plaintiff's personal life, increased his workload, and pressured him to take a demotion which ultimately led to his termination).

Applying the case law to the facts presently before the Court, the Court finds that they do not rise to the level of "extreme and outrageous" conduct. Even if they could, Alfred has failed to demonstrate that his experienced mistreatment "involve[d] a pattern of deliberate, repeated harassment over a period of time." *Nicholas*, 765 So.2d at 1026. In fact, he has failed to cite any relevant evidence whatsoever. Finally, Alfred has failed to point to any evidence in the record to demonstrate that anyone at DOC acted with the desire to inflict emotional distress upon him. Accordingly, DOC is entitled to summary judgment on Alfred's IIED claim.

## IV. Conclusion

For the reasons stated herein, DOC's Motions (doc. 21 & 22) are GRANTED. All of Alfred's claims are DISMISSED.

Signed in Baton Rouge, Louisiana, on May 27, 2014.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**